Thank you, Your Honor. May it please the Court, my name is Gwen Fanger from Davis Wright Tremaine, and we represent the appellant, West Coast Seafood Processors Association, and if I may, I'd like to reserve four minutes for rebuttal. Just watch the clock, Counsel. Thank you. We're here because the District Court denied the Association's motion to intervene as of right in an action challenging fishery management regulations brought by the NRDC. However, the central question here is solely whether the application was timely. The Association is a nonprofit trade association whose members are fish harvesters and processors who participate in the Pacific Coast ground fish fishery, and their fishing activities in this fishery are regulated by the very regulations being challenged by the NRDC. We understand that, Counsel, but the problem here is that your client knew about these proposed challenges to the regulations as far back as 2002, and even subsequent to that time, as I understand it, filed an amicus brief, but never sought to intervene. Well, the Association did try to intervene a few years ago, which was that motion was denied as well. But you never pursued it. You never appealed. Correct. Correct. But the circumstances have changed. So how could things get better for you the longer you wait? Well, because here we're in a unique situation where the circumstances affecting the Association's right to intervene have effectively changed upon the promulgation of these new 2009-2010 fishing regulations. Is there anything substantially different about the 2009 changes compared to the earlier ones? Yes, they're different. They represent different harvest levels of the fish that can be removed from the fishery. And they're part of this biennial regulation plan where every two years the National Marine Fishery Services re-evaluates, as part of their fishery management plan obligations, they re-evaluate the conditions in the fishery. And they take into account the changing environmental conditions, changes in any stock, fish stocks, different economic conditions, and then they adjust and promulgate new regulations based on what they're finding there. And why the challenge, as you described it, is any different than the initial litigation that started in 2002? And as a matter of fact, if I understand it correctly, there was a partial summary judgment here, which your client prevailed on, in four matters compared to three. Correct. But here the situation has in fact changed because the regulations superseded all the prior amendments and any prior specifications governing the fishery. And when they superseded and basically became substituted for any prior specifications, all of NRDC's claims, based on those prior amendments and specifications, became moot. So essentially, this is a new action. And rather than filing a new complaint, the NRDC amended its complaint to challenge these new regulations. The district court, after subsequent to our motion to intervene and when it eventually issued a summary judgment motion, even recognized that the prior specifications and amendments became moot. So the only live action and controversy at the time to be decided are these 2009-2010 regulations. This is a different situation from where other intervention motions, when they're decided on whether a past to summary judgment decision or upon settlement or after a consent decree has been entered or about to be entered. These are new actions. And under the Magnuson-Stevens Act, it's recognized as a new action. They're separately reviewable by the courts. There's a 30-day statute of limitations that a party who wants to challenge these regulations has to meet in order to challenge them. In each of the four times, Amendment 12, 16-1, 16-2, 16-3, 16-4, five times, the amendments themselves set up different methods or means by which to arrive at a specification which itself would tell you the level of phishing. Now, there was no attempt to intervene as to any of those. Was that because your phishing association could live with the final product and the specifications? Well, the specifications are what implement the fishery management plans. And at the time in the prior with the prior amendments and the prior challenges, there was nothing. The court was essentially monitoring the government's progress and adhering to its original order. There was no there was no effect on their interests. And I'm not saying that the regulations which set up the times, the bodies, the persons who would man the regional councils, didn't arrive at a per species take as to each fish. I'm sorry, I don't understand your question. I apologize. As I see you have two different methods here. You have the regulations and the amendments, and then you have the specifications which tell you just how many fish can be taken. Well, the specifications are part of the regulations. I mean, the regulations set up how much you can take from the fish in order to reach the optimal yield. But it's not that the specifications come out that the fishermen know how much they can take, right? Yes, yes. Now, there were specifications in the Amendment 12, Amendment 16-1, 16-2, et cetera. There was no attempt to intervene as to those. Why? Because at that time, there was the association. They were participating in the case as amicus. There was? They were participating in the case as amicus. But at the time, there was no there was nothing going on in the court to affect their Were there specifications arising out of each one of those amendments? Yes. And didn't they tell the fishermen how many fish they could take? Yes. Were the fishermen just feeling dandy with those specifications? That's why they didn't intervene. Well, I don't know if they were feeling dandy with those those specifications. But any time the specifications changed, the fishermen could decide whether or not to intervene because the nature of the change. But they didn't intervene. That's correct. They did not intervene. So now the roundhouse question. What's different between the Fifth Amendment complaint that caused your people to intervene then when they hadn't intervened earlier? Because at this point, the Fifth Amendment complaint superseded the prior specifications and regulations and that there was going to be a decision on the merits in this case. There had been up to. As compared to what? To the prior. Other than the 2001. Wouldn't there have been a decision on the merits based on the earlier complaint? No, because those specifications and amendments were moot after the 2009-2010 specifications were promulgated. Well, they just changed the specs. That's all. It's all within the same set of regulations, is it not? But the changing of the specifications and the regulations is material to the interests of the fishermen. Their interests and economic interests in the fisheries depend on how much fish they can take from the fishery, and they rely on what has been decided by the National Marine Fishery Services in order to promote their livelihood. When the challenge is to specific specifications where the NRDC is seeking to either reduce them even further or to zero them out, the fishermen, their rights to participate have been implicated, and because those specifications supersede the prior ones, the timeliness of their application should be measured from the point at which their interests are impacted. There was a change in circumstances in this case, and so on that basis, they — But how measurable is that change in circumstances? Does it have to do with the volume of fish? Yes. It's the volume of fish, and it's the type of — it's how much of each type of fish they can take out from the fishery and process. Is there anything in the record which will tell us, as amount of fish, the difference between the Fourth Amendment complaint and the Fifth Amendment complaint? How did it cut down, if it cut down, or it didn't cut down, the amount of fish you could take? I saw some tables that had the 2003 and 2004 fish take. I couldn't find any others. And there was a — the bouldered fish that were on their way out, or there was difficulty in finding them. But I didn't find anything comparing 2008, 2007, 2008, to 2009, 2010. You were looking for the actual numbers? Yes. I mean, this is the amount — as I see it, it's a matter of money, and it's a matter of price. And each fish has a price. It may be that the fishermen don't want to raise a fuss as long as they're getting enough fish. But when they get in the area where the shoe gets a little tight and it starts to squeak, and the National Resource Defense Council makes it squeak even harder, then they want to have their day in court. But my question is, why is the 2009, 2010 so different from any other year that this proceeding has been taken? It's different because the government is measuring what goes on in a fishery. The environment constantly changes. The levels go up and the levels go down. And over the years, the amount of fish that can be taken from the fisheries under whatever specifications are passed, changes based on the environmental conditions, how quickly a stock has been progressing towards coming back, and also other economic considerations. So what may be acceptable in one year will change two years later down the road when environmental conditions shift again. So in this case, when these conditions have changed and the seafood processors have sought to intervene because these very regulations that dictate how much fish they can take out of the fishery are being challenged or trying to be reduced even further. By the way, what's happened to the case in the district court since this appeal's been taken? Isn't it more or less over? No, Your Honor. The district court ruled on summary judgment then and directed the government to reallocate the 2009. You say directed the government to reallocate. You mean send it back to the agency? Yes. I'm sorry. The district court directed the government to reapply the 2007-2008 specifications and then go back and readjust the specifications moving forward based on their new findings. So the trial court did get to the 2009 and 2010 regs. Yes, they did. And you weren't a party at that time. Correct. So why do you need to intervene? We need to intervene because this issue is going to be repeated every two years when specifications and regulations get repromulgated, indicating new… You see, this business about repeating every two years, you knew that years ago, didn't you, that it was going to be repeated every two years? No, because the two years didn't start until 2003. In 2003, you knew it was going to repeat itself every two years, but you never intervened. Because there was nothing to affect our interests at that time. No, but you knew it was going to change every two years. Right, and because the amount of fish changes and their interest changes and it's a different amount affecting their interests. In addition, the district court has retained jurisdiction over this matter so that it would, if we were granted the right to intervene, we could participate. Kelsey, you're down to less than two minutes. You said you wanted to reserve, but you can… I'll just wrap up briefly. In addition to the fact that we contend this is a new matter and timeliness should be measured from the point of the filing of Fifth Amendment complaint, there should have been no prejudice suffered by any of the parties because with respect to the 2009-2010 specifications, which is the case we were trying to intervene in, there had been no answer filed, there had been no summary judgment motion with respect to the 2009-2000 regulations, settlement had not been reached, and there had essentially been no discussion and no decisions on the merits with respect to the 2009-2000 regulations. Thank you, Kelsey. Thank you. We'll hear from the appellees. Good morning, Your Honors. Good morning, Counsel. I'm Selina Kyle, and I represent the Natural Resources Defense Counsel. Laura Pagano is here with me today. Very well. The district court did not abuse his discretion in denying the processor's motion to intervene at least seven years after they first had noticed that this case could affect their interest in the fishery. We know that because in 2002, the processor said that further harvest cuts in this fishery would have direct and immediate impacts on their membership. That same year, they also said that their members routinely have very different views than the defendant agency here about appropriate levels of protection for this fishery. Let me ask you a question. Sure. Why did you feel it was necessary to file a Fifth Amendment complaint? What was insufficient about the First Amendment, Second Amendment, Third Amendment complaint, Fourth Amendment complaint? What new facts had to be alleged, what new theories, if any, had to be alleged? Why did you have to file the Fifth Amendment complaint? Your Honor, there were no new theories that needed to be alleged. There were no new theories that needed to be alleged, and our Fifth Amendment complaint preserved the legal theories from our Fourth Amendment. The issue since the inception of this case, the core issue has been the agency's failure to implement its rebuilding obligations under the Magnuson-Stevens Act. The first fishery management plan. It's not brick and cement. Rebuilding means more fish, increasing the amount of fish. What the Magnuson Act requires the agency to do is identify individual species in the fishery that are overfished. The Magnuson Act says for each of those species, the agency needs to come up with a plan called a rebuilding plan to restore that species to a healthy population level that's sustainable in the shortest possible time. So that's the rebuilding mandate that's been at issue since the beginning of this case. Each of the fishery management plan amendments we've challenged here is about how the agency intends to apply that rebuilding mandate. There have been a series of amendments. The reason for that is because, first, this district court, and then the Ninth Circuit has held that the agency hasn't been applying the mandates under the law. And when you say a series of amendments, is that, are you talking about amended pleadings, or are you talking about amended regulations? I was talking there about amended regulations. The amendments to the fishery management plan, and they're the ones Your Honor referred to earlier, 12, 16-1 through 16-4, each of those is directed to the rebuilding obligations. That's why each of those has been challenged in this case. I'm not sure I heard a response to Judge Bea's question, which was, what was different about the fifth? And it was, why did you feel you had to file a fifth in relation to, let's say, 4-3-2 in the original? The reason we had to file a fifth was that, as counsel for the processors noted, the agency issues new harvest measures every two years. In English? The agency issues new specifications. They're a set of rules that apply for two years that say how much of each species in the fishery can be caught. Well, that seems to me you're conceding your opponent's argument. There's something new in the fifth that wasn't true in the fourth or the third. There is something new in the fifth because the agency issues new harvest measures every two years, but that doesn't mean that our existing claims were moot. Amendment 16-4 was still a governing fishery management plan amendment about rebuilding. The defendant agency said that in their opposition brief on summary judgment. They said, yes, this is the amendment that governs. We applied this amendment in adopting the 2009-2010 specs. So they're complementary actions. The agency uses them together, and they reflect the same legal flaws here. That's why we had to amend to include the specifications. And perhaps it would help to give an example. One of the things ---- Was there anything that the agency did immediately before you filed your fifth amendment complaint, which they hadn't done before and which you found to be necessary to attack as improper? Yes. They had just reapplied Amendment 16-4 to specify the harvest levels for another two years in the fishery. And you thought that the harvest levels were too high. That's correct. They were too high given the agency's obligation under the Magnuson Act, which is to control harvest of overfished species and allow them to rebuild their populations. But you had attacked the 16-4 harvest levels under the fourth amendment complaint. The agency had maintained the harvest levels in their specifications of 2009-2010. And you thought that it was necessary to file a fifth amendment complaint to attack what was already attacked. That's correct in part, Your Honor. We had already attacked Amendment 16-4, and that remained part of our case. It was not moot because the agency had just reapplied it in the new harvest measures. The fishery management plan amendments are designed to govern the agency's application of its rebuilding mandates over multiple specification cycles. And that's necessary because under the agency's projection, some of these overfished species will take decades to rebuild. So one of the things the agency does in the fishery management plan amendments, like 16-4, for example, is set a target date, and this can be as far out as, say, 2086, when they think that that particular species will recover to a healthy population threshold. They need to account for that target date in the fishery management plan amendments when they issue new two-year specifications for the fishery. And that's because they need to account for how many fish will be caught. That affects how many will be left in the ocean and able to reproduce and rebuild the population. So the specifications, the two-year harvest measures, did not moot Amendment 16-4. They're designed to work together, and the agency applies them together. That's why our fifth amended complaint raised the same legal claims that we raised throughout the case. It just amended to add a new challenge to the agency's latest application of its rebuilding mandates. So this fifth amendment complaint did nothing more than challenge new amendments that have been put out by the agency? That's right. In addition to preserve our existing claims about Amendment 16-4 on the same legal grounds. So there were new amendments put out by the agency. Yes, there's a new set of two-year harvest measures. That's correct. And new numbers on the amount of fish to be taken. That's right, Your Honor. Some fish, they're allowed to be taken in greater numbers, and some fish they cut down on, right? That's right. And as Your Honor's noted earlier, that's a pattern that has existed in this fishery since the early 2000s. So why wasn't the new 2009-2010 specification a new set of cards as far as the fishermen are concerned? Because of the way the processors have articulated their interests here. What they said in 2002, and then again in 2009 when they finally moved to intervene on the motion on appeal here, is that any cuts in specifications in harvest levels in this fishery will hurt their members. So given how they've articulated their interests here, they have a concern any time there's a possibility that the agency could be forced to reduce harvests. And that's been implicated here since the beginning. Perhaps the National Resource Defense Council is not as attuned to the crass obligations of the bottom line in economic terms as are the fishermen. You can see perhaps a vanishing capitalist who says, I'm interested in the money I can make out of this. The regulations which are being put, you can live with during the years 2002, 2003, 2004. But when you get up to the 2009-2010, then they take a look at it and say, the government is becoming too exigent and we can't live this way anymore. Now, rather than just follow what the government has been doing, we've got to jump in on both feet and stop them. Wouldn't that be a difference? And wouldn't their jumping in be timely? That is a scenario that could potentially support late intervention. It doesn't apply here, Your Honor, because of how the, because of what the processors have said is their interest is in any potential reduction to fishing levels. That's been implicated in this case since the very beginning, because our complaint has always been that the agency is not rebuilding the fish quickly enough. In order to rebuild the fish faster, they need to cut harvests so that more of those fish are left in the ocean in the short run to reproduce. And it's another reason it doesn't work here, Your Honor. You asked earlier about the actual harvest levels that were set in the last specifications period, which was 2007. Your argument is since they've always opposed reduction in the fishing level, they should have been opposing it as a party since 2002. And the fact that they didn't do that, they've been sitting on their rights. That's correct. What this Court's authorities on timeliness say is that an applicant in intervention must intervene when they first know or have reason to know that the outcome of the litigation may affect their interests. It's clear from what the processors said here back in 2002. The intervention there, Madam, sometimes there are people who say, we're getting a bad shake from the government on this, but to intervene may cost more. We can live with this. And then there comes a time when the shake becomes so bad that they say, we can't live with this. Now we've got to stand up and talk about it. It's something similar to what happened in Boston in 1773. Your Honor, the Court has actually addressed this very scenario where a party believes it may have an interest in a case but is concerned about the cost of intervening, chooses to hold back and adopt a more limited role. What the Court said about that in Alice L. is that that's not a convincing justification for failing to protect one's interests by moving to intervene. And the reason the United States v. Alice L. Water Company opinion is cited in our brief. It's 370F3 915. And the reason for that is fairness in judicial economy. If the rule were the one that the processors were urging, which is that a party who had an existing interest could reapply to intervene any time there was some new procedural development of a case that implicated that interest again, it would be very hard to ever resolve lawsuits like this. Let me ask you, why does the NRDC feel so strongly about the processors intervening? You obviously opposed their motion, what, two years ago, whenever it was, the last one? That's right. So what would have happened to the case if they did have a seat at the table? Well, the same things that would happen now and those would cause highly prejudicial delay. Keep in mind that the processors have been amici in this case since 2002. So as it is, they have the opportunity to brief and present oral argument on all the issues raised in motions filed by the parties. So had they been allowed to intervene, presumably the reason that they wanted party status is to file new motions, to reopen issues that have already been resolved, to introduce new issues, or potentially to withhold consent to the Court's jurisdiction. This Court is a magistrate, but the parties, the original parties, have consented to have him preside over the proceedings through trial. It would be very prejudicial at this point to inject new issues or to have the case reassigned to a new judge. It has an administrative record that spans over 120 paper volumes. The Court is substantially engaged in this issue. But the trial judge might very well say in the exercise of my discretion and in case management, you can have discovery as to anything that's brought up by the Fifth Amendment complaint, but you were around during the Fourth, the Third, the Second, the First Amendment complaint and you didn't seek to intervene then, that would be an unjustifiable burden on the other parties. Stop. Go forward, not go back. That would sort of make sense, wouldn't it? It would, Your Honor, but it wouldn't cure the prejudice here, because there would still be this issue of potentially reassignment to a new and unfamiliar judge. There's also a possibility that, for example Why would there be a reassignment to a new and unfamiliar judge? Because it's a the presiding judge here is a magistrate and Judge Larson signed this, did he not? Yes. Has he been stipulated by the parties to be the judge in this case? The parties consented to his jurisdiction through trial at the very beginning. Why would it be taken away from Judge Larson? He'd just be told what to do, maybe do it right. It wouldn't be taken away from him. Perhaps, Your Honor. I don't think this Court has squarely addressed the issue, honestly, of what would happen in this situation. So we thought it was possible that the interveners could withhold consent. Is it a forum shopping issue lurking beneath the surface here? Absolutely. I think that reversal in these facts would create a terrible precedent here, because whatever the processor's motives, what that would mean is that a party that was well aware of a case, well aware of a threat to their interests, could choose to hold back for years and years, see how the case was going, and then decide at the 11th hour to try to reopen issues that had been decided in a way they didn't like, raise new issues to delay ultimate resolution of the case, or try to get the case moved to another judge. Of course. Now, you know, you raise an entirely new issue. I haven't thought about that now. You think that's the proper ground, though, to deny intervention because the party wants an Article III judge? Well, that's actually a – That party has a right? The district court did not reach that issue. He didn't feel that he needed to. Are you saying it's a proper consideration? Yes. I think this Court could exercise its discretion to consider that in addition to the prejudice facts that the district court relied on and the facts on length of and reason for delay and station. Do you know any case that addresses this issue? The Posner – Judge Posner's opinion in the People Who Care case, its Seventh Circuit opinion, that's cited in their papers, considered the issue of whether it's appropriate for a magistrate judge to consider rule on a motion to intervene because of this potential consent issue and found that, yes, it's a necessary and proper incident to the magistrate's power to preside over the case through  No, but did he consider whether it's proper to rely on – on the fact that that intervening party might not consent to the magistrate's jurisdiction as a ground for denying intervention? No, Your Honor. But – and the court doesn't need to reach that issue here. The district court didn't rely on it. There's ample evidence other than that that this motion was entirely prejudicial. Yes, but you just raised it. We're not going to ignore it now that the door has been opened. So is there anything in the papers seeking intervention which suggests that the seafood people want to exercise their right to an Article III? My – Your Honor, I see my time is up, but if I could just answer that question. Yeah, absolutely. No, go ahead. There isn't – they did not seek to limit their intervention in any way. Their proposed order just grants intervention. But what this Court has said is that ordinarily consent to a magistrate must be expressed. It can't be implied from conduct. So I don't think the fact that they've been silent on the issue should be read as a commitment not to withhold consent. If they waived their right and consented in their paper, would you still oppose? Absolutely, Your Honor, because if the district court found there's other opportunities for prejudicial delay here, they could move to reconsider issues that had already been decided. They could move to stay the remedy that's currently in effect pending appeal. That goes back to Judge Bea's question. If it's the same magistrate, he's not going to allow that sort of nonsense to go on. Well, let me give you another example, Your Honor. The agency is under a remand order now. We hope that the action they follow following remand will be legal and that the case will be over at that point. But it's possible that what the agency issues may be acceptable to the agency and may appear legal to the plaintiffs, but that the processors may want to challenge it because, as they have said since the early 2000s, they have very different views in the agency about how much phishing is appropriate, how much protection is necessary for overfished species. Let me ask you about delay. I don't see how delay bothers you. The more that this case is delayed, other than your incidental costs of representing your client, the more a specification for rebuilding with which the fishermen disagree, because it doesn't allow them to take enough fish, stays in power, and therefore the more fish there will be in the ocean. I'm not sure I – could you rephrase that? I'm not sure I understand. Delay is your friend. It puts more fish in the ocean. It depends on the point in the case. We very much want to resolve this litigation. If the agency were to issue an action after remand that we thought was legal under the rebuilding mandates, the case would probably be over, but not necessarily if the processors were allowed to intervene and challenge that new action following remand. And that could happen here because the district judge retained jurisdiction. I know we're over time, but I wanted to ask you, did I state it correctly when your opponent was arguing that, in fact, the seafood processor prevailed on four out of the seven issues in the summary judgment? Did I read that correctly or not? You're correct that the district judge found that the agency had not violated its obligation to rebuild the species as fast as possible with respect to four of the seven species at issue. That's right. So there's a significant set of issues on which the government has won. There's some other ones on which we won. The government and presumably their interests are allied with the seafood processors or not? For purposes of the ultimate objective in this litigation, which is an important factor under this court's case law, yes, it's to uphold the actions that we challenge. So what's left at this point? What's left is the agency's revisions of its rebuilding plans for three species. There's also an economic analysis issue that spanned their fishery management plans for all seven of the species. But those were resolved in summary judgment, were they not? They were resolved in summary judgment, but the district court issued a remand order, which is in effect now, that will require the agency to revise its regulations for the next harvest cycle. The agency is doing that work right now. All right. Thank you. Thank you, counsel. Thank you. Ms. Fanger. Thank you. I just wanted to address three quick points raised by the NRDC. First, I wanted to point out to the court the Gulf of Maine Fishermen's Alliance case as illustrative of the effect of new regulations on prior regulations and how they supersede prior regulations. And as the new regulations come out, they tend to get stricter and stricter and stricter to address deficiencies in prior regulations. And that is tied to the levels also to the interests of the Fish Processors Association, whose interests have been implicated upon the filing of the Fifth Amendment complaint. Also, it's important to keep in mind that this is not the new claims in the Fifth Amendment complaint are not just new procedural developments that have arisen. They are based on new economic assessments and new environmental assessments of a constantly changing environmental area of body of water. That weren't known or could be known in the prior stages of this litigation? That's correct, because the environment itself changes, and the new regulations take into account. They go through how the environment has changed and how have certain fish started to come back more than others. And in this particular fishery, the thing that's changed the most is the amount of fishing has actually gone down over time. The number of boats fishing in the fishery have decreased by nearly half. So all those things have to be taken into account when they're looking at the new regulations to promulgate new regulations and tie them into their obligations under the Fishery Management Plan. All right. Let me ask you, if we were to rule in your favor, what do you see the future path of this litigation? It's already on remand, and you've prevailed in half of the disputed issues so far. What would you do if you were allowed to intervene? Well, moving forward, we would, I imagine, moving forward that we would participate and as the judge monitors, I mean, the judge has still kept jurisdiction over the claims, so we would have to participate in that. Yeah, but your opposing counsel is alleging that you're going to just bring everything to a halt, you're going to complicate things, you're going to bring in new motions, presumably, and perhaps insist on your Article III rights. Well, I would like to point out, this is my third point I was going to make, we took no position regarding the Article III judge in our papers. Are you willing to waive that since this is already assigned to a magistrate and with consent from the other parties? Well, I don't think we can waive that off the top of the bat. I mean, if we were allowed to intervene, that would be a right to fully participate in the case, but we took no position about that, and I can't say that we would waive it at this point. Well, you made your opposing counsel's assertions, which certainly got my attention. What's your response? Our response is we don't have a position on that at this time. We would be within our rights to either consent or not consent, because the thing to remember is, and even the district court recognized, we had a full right to participate in this case. It was just a question of timing. I'm not willing to make any hint that your purpose is not to slow down this process by such as getting a new judge or bringing in new issues, whatever. That's correct. I don't think necessarily our purpose is not to slow down this litigation at all, but the idea of even any sort of delay alone is not a reason to withhold the right to intervene. Well, that was a factor. Yes, but there has been the NRDC amended its complaint five times over the course of these years. I mean, this case has been going on for seven or eight years now, and it's been resolved with respect to the 2009-2010 regulations at this point. Okay. Thank you, counsel. Thank you very much. The case just argued will be submitted for decision.
judges: Bennett, O'scannlain, Tashima